CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 17, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| Alpha Kappa Housing Corporation et al., Plaintiffs, | ) | Civil Action No. 3:26-cv-00060 |
| v. | ) | MEMORANDUM OPINION & ORDER |
| Alpha Chi Sigma Fraternity et al., Defendants. | ) | By: Joel C. Hoppe, United States Magistrate Judge |

This matter is before the Court on the Alpha Chi Sigma ("AXE") Defendants' motion to disqualify David Harrington, Esq., from representing Plaintiffs in this matter. Defs.' Mot., ECF No. 19. These Defendants argue that Mr. Harrigton is likely to be a necessary witness in this case and, as such, Rule 3.7 of Virginia's Rules of Professional Conduct precludes him from acting as Plaintiffs' advocate. The motion has been fully briefed, ECF Nos. 20, 28, and can be resolved without a hearing, Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b).

I. The Legal Framework

The U.S. District Court for the Western District of Virginia generally looks to the Virgina State Bar's Rules of Professional Conduct to govern attorneys who are admitted to practice before this Court. *See Rivers v. United States*, No. 6:18cv61, 2020 WL 1480834, at *1 (W.D. Va. Feb. 26, 2020) (citation omitted). "When an attorney violates [these] ethical standards, it is proper for the opposing party to file a motion to disqualify counsel," *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 107 (M.D.N.C. 1993). *See, e.g.*, Va. R. Pro. Conduct 3.7 comment 2. But asking to disqualify your adversary's "chosen counsel is a serious matter," and one that "Virginia courts do not take lightly." *Rivers*, 2020 WL 1480834, at *1 (cleaned up). The moving party thus "bears a high standard of proof to show that disqualification is warranted." *Tessier v. Plastic Surgery Spec.*, 731 F. Supp. 724, 729 (E.D. Va. 1990) (quotation marks omitted). "Although the

Court has broad discretion to determine whether" the attorney's continued representation violates the pertinent Rule, "the Court must make a case-by-case determination based on specific facts offered by the moving party." *Road King Dev., Inc. v. JTH Tax LLC*, 540 F. Supp. 3d 554, 561 (E.D. Va. 2021) (applying Rule 1.9); *see, e.g.*, *Sutherland v. Jagdmann*, No. 3:05cv42, 2005 WL 6564314, at *2 (E.D. Va. Oct. 31, 2005) (applying Rule 3.7(a)); *United States v. Perry*, 30 F. Supp. 3d 514, 537–38 (E.D. Va. 2014) (considering evidence offered by both parties in applying Rule 3.7(a)–(b)).

The AXE Defendants move to disqualify Mr. Harrington, who is Plaintiffs' sole counsel of record in this case, under Rule 3.7(a). Defs.' Mot. (citing Va. R. Pro. Conduct 3.7(a)). That Rule instructs:

> (a) A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness except where:
>
> 1. the testimony relates to an uncontested issue;
> 2. the testimony relates to the nature and value of legal services rendered in the case; or
> 3. disqualification of the lawyer would work substantial hardship on the client.

Va. R. Pro. Conduct 3.7(a); *see Perry*, 30 F. Supp. 3d. at 529–30. The predicate standard—i.e., that "the lawyer is likely to be a necessary witness"—requires the moving party to show "that the witness-advocate's testimony is *strictly necessary*, not merely that it is relevant and useful." *Perry*, 30 F. Supp. 3d at 545–46 (cleaned up) (emphasis added); *see Teleguz v. Commonwealth*, 643 S.E.2d 708, 728 (Va. 2007) (adopting "strictly necessary" as the "predicate" standard for Rule 3.7(a)). The moving party must also produce "specific evidence demonstrating the necessity of [opposing counsel's] testimony." *See Tattoo Art, Inc. v. TAT Int'l*, No. 2:10cv323, 2010 WL 11469802, at *2 (E.D. Va. Oct. 18, 2010) ("The moving party must have some evidentiary support for its arguments.").

## II. Background

Plaintiff Alpha Kappa Housing Corporation ("AKHC") owns a private eight-bedroom house in Charlottesville, Virginia. *See* Am. Compl. ¶¶ 3, 16, ECF No. 29. AKHC rents space in the house to Plaintiff Alpha Kappa Alumni Foundation ("AKAF"), as well as to the Alpha Kappa Chapter of the AXE Fraternity at the University of Virginia and to student members ("brothers") of the AK Chapter. *See id.* ¶¶ 16–17. In 2023, Defendant AXE Fraternity put the AK Chapter on probation for "hazing" that allegedly took place at that year's annual initiation. *See id.* ¶¶ 32, 34–36. The AK Chapter reluctantly acquiesced to probation. *See id.* ¶¶ 42–45. That October, "AXE sent a letter (the 'Probation Letter') to the AK Chapter setting the terms of its probation." *Id.* ¶ 46. AXE also held a meeting at which Defendant Merryn Cole told the AK Chapter that it could not have alcohol at any "Fraternity event" while it was on probation. *Id.* ¶ 47. She warned the AK Chapter it "would face more serious sanctions" if it violated the terms of its probation. *Id.* "Ms. Cole listed multiple vague factors, including the presence of four or more brothers, that [AXE] would consider in deciding after the fact whether a gathering or activity had constituted a Fraternity event." *Id.* The AK Chapter responded that "eight brothers lived in the House," so "virtually everything" that happened there "could be deemed a Fraternity event under the factors provided." *Id.* ¶ 48. The AK Chapter wanted to comply with AXE's terms. *Id.* To do so, it asked for "a clear standard that it could use to determine, in advance, what would and would not constitute a Fraternity event." *Id.* "Defendants refused to provide an unambiguous standard [and] no guidance or clarification was given." *Id.* ¶ 49.

Plaintiff "AKHC learned of these developments" around the same time. *Id.* ¶ 51. On November 20, 2023, Mr. Harrington wrote a letter to members of the AXE Supreme Council explaining AKHC's legal and business concerns with the terms of probation and proposing a "bright line" solution. *See id.* ¶¶ 53–57. He wrote the letter "on behalf of" AKHC and signed it in

his capacity as AKHC's President. Am. Compl. Ex. A, ECF No. 29-1. Mr. Harrington wrote a second, similar letter to members of the AXE Supreme Council on January 18, 2024. *See id.* Ex. B, ECF No. 29-2. That July, representatives from AXE, AKHC, and AKAF met to discuss the situation. *See* Am. Compl. ¶¶ 73–77. They agreed that AXE would "create an *ad hoc* Health & Safety Policy Review Committee . . . to revise the Fraternity's health and safety policy to make clear when the policy applies, i.e., what constitutes a fraternity event." *Id.* ¶ 78.

On September 28, 2024, Ms. Cole appointed Mr. Harrington and four other individuals to serve on the committee. *See id.* ¶ 80. In January 2025, the committee unanimously approved a Revised Policy and transmitted it to the AXE Fraternity. *See id.* ¶¶ 82–86. The AXE Fraternity did not act on this version. *See id.* ¶ 87. Instead, Plaintiffs believe that Ms. Cole and Defendant Jason Ellis gave the Revised Policy to AXE's insurance broker, Holmes Murphy. *Id.* ¶ 88. Ms. Cole and Mr. Ellis then "worked in private with Holmes Murphy to devise a materially different health and safety plan." *Id.* The Fraternity's Supreme Council adopted the Holmes Murphy Policy in July 2025. *Id.* ¶ 89. This "Policy contains a vague definition of 'fraternity event' and provides no meaningful guidance as to when the policy applies." *Id.* ¶ 90.

On October 10, 2025, AKHC sent AXE Fraternity a letter stating its "intent to sue if an amicable settlement could not be reached." *Id.* ¶ 96. Mr. Harrington signed the letter "in his capacity as President of AKHC." *Id.* Mr. Harrington has been an AXE brother since 1985. *Id.* ¶ 97. He "was also a Professional Representative of the Fraternity," having "been elected to a two-year term in a nationwide election in December 2024." *Id.* "Professional Representatives are part of the Fraternity's preeminent governing body—the Grand Chapter—and have a broad mandate to promote the Fraternity's professional (post-collegiate) activities." *Id.* Plaintiffs allege that, after Mr. Harrington sent the October 10 letter, the Individual Defendants conspired to expel him

from the Fraternity through intimidation and a "sham" conduct proceeding. *See id.* ¶¶ 98–109. On December 4, "Defendant Cole informed Mr. Harrington that he had been expelled." *Id.* ¶ 110.

Mr. Harrington filed this civil action on Plaintiffs' behalf in June 2026. *See* ECF No. 1. On August 12, the AXE Defendants filed a motion to dismiss the complaint under Rule 12(b)(6), ECF No. 17, as well as this motion to disqualify Mr. Harrington from representing his clients, ECF No. 19. On September 2, Plaintiffs timely filed a first amended complaint, which rendered the Rule 12(b)(6) motion to dismiss moot. *See* Oral Order of Sept. 2, 2026, ECF No. 30. Their Amended Complaint asserts causes of action for tortious interference with business expectancy, business conspiracy, and civil conspiracy. *See* Am. Compl. ¶¶ 126–52. The Defendants filed motions to dismiss the Amended Complaint. ECF Nos. 31, 33.

*

The AXE Defendants argue that Mr. Harrigton must be disqualified from representing both Platiniffs in this case because his

> testimony is central to almost all of the underlying allegations made by the Plaintiffs. As president of Alpha Kappa Housing Corporation, his testimony is essential to the operations of the business and AKHC's rent expectancy, which are at issue in the . . . three counts of the [Amended] Complaint. His testimony will be necessary in the Court's evaluation of the business expectancies of the Plaintiffs. Additionally, his allegations that the Fraternity wrongly expelled him with a "sham proceeding" would require him to testify in the capacity as a witness.

AXE Defs.' Br. in Supp. 3 (citations to the complaint omitted). They also argue Mr. Harrington is improperly "representing a corporation that is a vessel for his own interests." *See id.* at 4–5 (citing *Premium Prods. v. Pro Performance Sports, LLC*, 997 F. Supp. 2d 433, 434–37 (E.D. Va. 2014) (Lee, J.)). The AXE Defendants did not produce any evidence to support the arguments in

their opening brief.[1] *Cf. Caraway v. City of Pineville*, 111 F.4th 369, 379 n.10 (4th Cir. 2024) ("[A] brief is not evidence.").

Platiniffs oppose the motion. Pls.' Br. in Opp'n, ECF No. 28. They argue that the AXE Defendants cannot show that Mr. Harrington's testimony likely will be strictly necessary to resolve a contested issue before they have even answered the Amended Complaint. *See id.* at 2, 5–6; Va. R. Pro. Conduct 3.7(a)(1). They also submitted declarations from AKHC and AKAF board members to show that Mr. Harrington's personal knowledge of each client's corporate operations and business expectancies is not unique, that other board members are competent to testify about the events giving rise to this action, and that disqualifying Mr. Harrington would work a substantial hardship on both clients because they cannot afford to retain new counsel at market rates. *See generally* Pls.' Br. in Opp'n at 2–3, 6–7; Decl. of Neal MacDonald (Aug. 23, 2026) (AKAF), ECF No. 28-1; Decl. of Lauren Abbott (Aug. 23, 2026) (AKHC), ECF No. 28-2. The AXE Defendants did not file a reply brief.

## III. Discussion

The AXE Defendants have not shown that Mr. Harrington "is likely to be a necessary witness" in this case. Va. R. Pro. Conduct 3.7(a); *see Teleguz*, 643 S.E.2d at 728 ("The facts of this case do not provide that predicate."). Indeed, despite acknowledging the "high standard of proof" they must meet here, Defs.' Br. in Supp. 4, Defendants have not proffered *any* specific facts about what Mr. Harrigton might say or why his testimony would be "strictly necessary." *See Tattoo Art*, 2010 WL 11469802, at *2–3. Their brief includes a cursory description of Mr.

[1] This brief also asserts without explanation that Mr. Harrington's "necessary . . . testimony does not fit within any of the three exceptions outlined in Rule 3.7." *Id.* at 3. Defendants forfeited any argument on this point by failing to develop it in their opening brief. *See Grayson O. Co. v. Agadir Int'l*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)).

Harrington's "likely knowledge" based on a few facts alleged in the Plaintiffs' complaint, but those allegations "do[] not represent such testimony as genuinely unique so as to be strictly necessary." *Sutherland*, 2005 WL 6564314, at *2. Accordingly, I do not need to consider whether the exceptions to Rule 3.7(a) apply here. *See id.*

The AXE Defendants argue that the facts in our case "are analogous to the facts" that persuaded Judge Lee to disqualify plaintiff's counsel in *Premium Products*, 997 F. Supp. 2d 443 (E.D. Va. 2014). *See* Defs.' Br. in Supp. 4–5. I disagree.[2] There, Premium's sole counsel of record had "served as its sole, owner, officer, director, patent attorney, and inventor" since 1984. *Premium Prods.*, 997 F. Supp. 2d at 434. He was also "the sole inventor of the patent at issue" and "the sole prosecuting attorney both of the patent and the trade dress" claims against the defendants. *Id.* at 435. "Given the depth of [the attorney's] involvement," Judge Lee found it was "clear that [he] would be a necessary witness at trial." *Id.* Indeed, the attorney had not argued otherwise. *See id.* Judge Lee also rejected Premium's argument that *the attorney himself* should be considered "the litigant [because] Premium serves merely as an incorporated vessel for [his] interests." *See id.* at 436 ("Premium is the litigant in this case and Speigel's representation of Premium implicates all of the concerns animating the witness-advocate rule.").

Here, the AXE Defendants presented no evidence to support their argument that Mr. Harrington's relationship with AKHC and/or AKAF is "analogous to" the one between Premium and its sole owner, officer, director, inventor, patent attorney, and counsel of record, Defs.' Br. in Supp. 5. *See Tattoo Art*, 2010 WL 11469802, at *2 ("The moving party must have some evidentiary support for its arguments."). Moreover, Plaintiffs submitted declarations stating that

[2] Even if those facts were "analogous to" the facts here, they would not "compel th[is] Court to make the same finding" as Judge Lee, Defs.' Br. in Supp. 5. *Cf. Camreta v. Green*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (cleaned up)).

Mr. Harrington "is one member" of each organization's board of directors and that "[o]ther officers and directors" are competent to testify in this case. *See* MacDonald Decl. ¶¶ 3, 10; Abbott Decl. ¶¶ 3, 10. The AXE Defendants do not dispute this evidence.

## IV. Conclusion

The AXE Defendants presented no evidentiary basis to conclude that Mr. Harrington's role as Platiniffs' sole counsel of record in this case implicates Rule 3.7(a). *See Tattoo Art*, 2010 WL 11469802, at *2–3; *Sutherland*, 2005 WL 6564314, at *2. Their motion to disqualify, ECF No. 19, is hereby **DENIED**.

It is so ORDERED.

ENTERED: September 17, 2026

Joel C. Hoppe
United States Magistrate Judge